United States v. Ynddy Blanc Good morning. Margaret Fuldus, Assistant Federal Public Defender on behalf of Mr. Blanc. Today I would like to discuss three issues, a little ambitious, but I would like to start with the sentencing guideline issue and if there's time that permits the 404B and the 403. The guideline 2G 2.2B7 is a pure statutory text guideline that was required by Congress to be put directly into the guidelines. It dictates that there are enhancements based on the number of images that a defendant possesses for child pornography. The commission wrote a commentary that instructed that the guideline, the 2G 2.2B7 guideline, that videos were to be considered 75 images no matter how long or what was on them. Under a Kaiser Dupree analysis . . . Do we review this argument for plain error? Because it did not appear to be that trial counsel made that objection in the district court. So I would argue, Your Honor, that it's actually de novo review because there was an objection made to the 2G 2.2B7. But the objection was only the application of this enhancement would result in a guideline range, quote, out of touch with current technological trends, end quote. Well, if you read through the entire objection, it's the written objection and it's docket entry 80. That was the main thrust of what he was arguing. I just will point out that Dupree had not even come out at this point. So the arguments were not as well . . .  Right. But he did say that the enhancement should not be based on the fact that images were videos rather than stills. And that was on page six of his written objections. And then he reiterated his objections at the sentencing and he also objected to the way that the government was calculating the images because they were arguing for the highest enhancement. So he did get into that a little bit at the sentencing. Let me ask the question this way. If we were to conclude looking at the record that this issue had not been properly raised and preserved and therefore we were, as Chief Judge Pryor's question suggested, looking at this only for plain error, was there anything from the Supreme Court or this court directly on point? Yes, Your Honor. I would argue that we do meet the plain error standard because deference should not have been given and that's clear under a series of cases. So you have Kaiser, the Gonzalez case, which I cited too, and Loper, which all make very clear that when you have a statutory provision that the agency or the commission is trying to interpret that there is no deference there. And that's doubly clear now because of Loper. And then we also have the Dupree and Stinson cases that talk about the parallel or similarities between the agencies and the commission. Did any of those cases deal with 2G2.Bs? No, they don't. But I don't think you need to have one because the issue is not about the vagaries of the 2G2.2B7 enhancement itself or even the statute. It's about the fact, like under Loper, if you have an agency interpreting a statute, there is no deference. It's just a very clear-cut issue. And so you don't have to have, you know, it's very similar to Stringer v. Black where you see- But those are different arguments, right? The Loper argument is a different argument than the Dupree argument. There's some overlap, but they're different arguments. I think that the only difference is the difference between the fact that in Kaiser, you're talking about a regulation that was written by an agency or the commission. But you give, even after Loper-Brett, you still give an agency some deference, lower-level deference, to interpret its own regulation, do you not? Well, this is not its own regulation, though. It's the statute of Congress, and so there is no deference. But your attack is on the guideline. And the guideline is the statute because the guideline quotes verbatim what Congress wrote and told the commission to put into the guideline. All right, let's assume it's de novo review as you suggest. Why isn't the video terminology ambiguous? Under Loper, you don't even get there because the guideline itself is a statute. It's a verbatim quote of what Congress told the commission to put into the guideline. It actually wrote that table and told the commission, you must put this table in the guideline. So it is, in effect, under the Gonzalez case, it is, in effect, the statute. And the agency or the commission has no special expertise to interpret a statute that Congress wrote. What does a video equate to for sentencing purpose under the guidelines? It's under normal statutory interpretation that the court has to do. No, no, I'm asking you what the answer is. What does a video equate to under the guidelines? A video equates to an image or if you... A single image? Each video is a single image? There are two different ways to look at it. And you have to go through a statutory interpretation of it. But you would be looking at the text within the context of the child pornography laws and the ordinary way that this word is used. So with a video, you can look at it two ways. Because with Congress, well, under an ordinary... The ways that each image, each frame of the video would be a separate image? That would not be, Your Honor, because that's not an ordinary way to use that word. Nobody walks around and says, I just looked at a two and a half minute video and I watched 14,000 images. Nobody talks about that. But no one talks about when they watch a video, how many images were in it either. And isn't the terminology in the statute about images? It is about images, but... All right. So how are we to understand that? People do... If someone is told that and they're told, well, you have to figure out how many images are in a video, why wouldn't knowing that, why wouldn't a person knowing how videos work conclude that every frame is a separate image? Well, because in child pornography, it's not concerned with the technicalities of how film is made. It is concerned with what the pictures are on that... I was just trying to figure out what the ordinary meaning of the word was in this context. Within the context of... Now we're talking about what child pornography is about. That doesn't seem to be particularly responsive. I'm sorry. I thought it was responsive because we're talking about the child that's where we get this guideline. That's what the guideline is governing. So within the context of that... Tell me though, what would be the ordinary understanding of the term image? Okay. So I think there... In relation to a video. Okay. Well... And I don't know why it would matter whether it's an Academy Award winner or child pornography. How would you understand images on a video? Right. First, I just also want to point out that the guideline itself doesn't use the word video. It uses the word images. Right. And we have a video. Correct. So images can be one of two things for videos under an ordinary understanding. And in the context of the statutes, it can either be a one-to-one because there has never been a distinction made, or it can be multiple... What do you mean a one-to-one? I'm sorry. It could be one image per video because there has never been a distinction made, or it can be multiple images. But again, that would be... Every frame, which was my question to start with. That's one way it might be understood. That would be, in my opinion, that would be a very strained interpretation of what an image is because I think the more... All right. You said there are two. All right. What's the less strained version? The less strained version is an image that shows what the picture of the child porn is. When we're talking about images, if I was to send you an image of a car going off a bridge, I might text you and say, I'm sending you an image of a car going off a bridge. It could either be a still photograph, or if I had my phone and I wanted to use the video function, I could make a video and I could send it to you. And the text would still be the same because in ordinary language, we don't necessarily distinguish between an image that's a still image or an image that's a video. What do you do practically with... I mean, all of us have unfortunately had to deal with these child pornography cases and some of them involve different clips involving different children. But what do you do with a video that has different clips of different children? Right. And I think that that's exactly where I was trying to go. How do you treat those? What does a district judge do with those? I think that each scene where there's the same people in the same incident, that is an image of that incident. Every time another person enters or leaves the scene? Yes. What if there are multiple sex acts involving the same persons? I guess it would depend. That particular more granular distinction would depend, but still it would be more even if you did that with every single sex act, it would be more reality based than a 75 to one or a frame to frame. Based on your view of how this statute slash guideline gets interpreted, what's the definition of image? A district court says, okay, I have a video. The definition I have to employ is... That every... Video equals blank. ...that the images in the video to be counted up would be dependent on different scenes of child porn, like different incidents of child porn. Which is based more on reality about how many images the defendant actually has than a frame by frame by frame analysis. Ms. Otis, you said at the start that something that I agreed with, which was it was going to be ambitious to get through the three arguments you've outlined. We've only done one. Yes, and I see that my time is out, so I guess I will go ahead and sit down, but thank you. Ms. Mundell. Good morning, Mr. Chief Judge, Your Honors. May it please the court. Amanda Mundell on behalf of the United States. I want to start basically where we left off on the image calculation and answer some of the court's questions. How do we review this? Your Honor, we submit that this is under plain error review. Tell me why. Sure, Your Honor. So below, Mr. Blanc never raised a Kaiser challenge to the image calculation. Now, I take Ms. Fulda's point that on page six of docket entry 80, there's a single line that states the defendant should be sentenced based upon his conduct, not for the fact that the images were discovered on a cellular phone or that they were videos rather than still images. But in the context of his argument in that sentencing submission, and again at sentencing in the transcript, it's clear that Mr. Blanc is actually just seeking a downward variance based on his understanding that the image table is just too harsh to reflect the severity of the crime. So he argued that the quote, the sentencing scheme established in U.S. sentencing guideline 2G 2.2 is overly severe and based upon enhancements that are entirely out of touch with current technological trends. Precisely, Your Honor. Did not mention that the videos were counted improvidently or anything like that. Do I have that right? That's right, Your Honor. He didn't address the commentary to the guidelines. I didn't spell out any sort of Kaiser argument or our deference argument or even seminal rock deference. Or even say each video should count as one image. That's right, Your Honor. So here we're on plain error review, and that really informs how this court ought to approach the inquiry. So assuming we review it for plain error, is there any precedent from the Supreme Court or this court that directly resolves the issue? No, Your Honor. So the Supreme Court in Lope or Bright didn't address whether Kaiser is still on the books. It only addressed whether Chevron deference ought to continue. There's no decision by the Supreme Court, certainly about the image table or the guideline commentary there. And this court as well, most recently in Peralta, actually went ahead and applied Kaiser deference to commentary with respect to the image table. So there's no decision of this court. But she says it's not in one opinion. You have to add A, B, C, and D together. And in the aggregation, you get the answer. No, Your Honor. And in fact, this court's case law is pretty clear that for there to be plain error, there has to be either a Supreme Court case on point or an 11th Circuit case on point. And neither of that is true. And in fact, as we did in our 20HA letter, there is... Plain statutory language that has been violated. So, Your Honor, I actually want to unpack that a little more because I don't think that that's exactly what's going on here. No, I'm not saying here. But if you have a statute that says, for example, you can't sentence someone to more than 10 years for this crime, no objection is made, but the person gets a 15-year sentence. Yes. That satisfies... That would certainly be plain. Right. Yes. I'm not saying this case. Right, Your Honor. And of course, we don't have that here. I would... If the court has questions about how to apply kaiser deference, I'm happy to answer them. We, you know, submit that the colloquy back and forth between Your Honors and Mr. Blanc's counsel sort of demonstrates that this is a difficult question and also demonstrates that there's ambiguity with respect to the definition of images. And we would rest on our briefs with respect to those arguments. Now, I understand... Are there any limits on what the Sentencing Commission can do in equating a video with a certain number of images? Your Honor... Really in light of the Supreme Court's recent landscape in cases like Lope or Bright? Well, Your Honor, I think the Kaiser test outlines exactly the framework that we ought to apply to assess whether the commission's definition and explanation of images and how it applies to videos is reasonable. So here, the commission did engage in the very sort of analysis that Kaiser envisions. It recognized that Congress hadn't defined image, recognized that there's ambiguity there, and it even sought public notice and comment to ask how a video should be counted. It received comments on both sides of the aisle with some saying that a video should equal one image and others saying that, well, one option would be to treat every frame as an image. Voted on it. That's right. And the commission... Sent it to Congress for approval or for disapproval, I should say. Exactly, Mr. Chief Judge. And so under these circumstances, the commission ended up deciding that the most appropriate equation of a video to image is a 75 to one ratio. And that makes sense because if one video were to equal the number of frames in every second, a defendant would very quickly max out on the enhancement. And so the commission took that into account, found that because Congress had set a two-level increase for 150 images, that something in the middle at 75 for one video would be appropriate. That's certainly within the range of reasonableness. And Mr. Blank's counsel doesn't really have an explanation for why that's unreasonable. And the one-to-one definition for a video and image we would submit is utterly unreasonable because, of course, a video exists with multiple images. There are two other issues that Ms. Foldis had identified, and I suspect maybe she'll address them in rebuttal. She won't, not unless you do. Well, then in that case, Your Honor, I have nothing to say on those issues. We're not going to be doing new arguments on rebuttal unless you raise them. That's fair enough, Your Honor. I have nothing to say on those issues, then. We would submit those on our briefs. But you're free to if you want. I'm all set, Your Honor. We would simply ask that this court affirm. Thank you. Ms. Foldis. So with respect to the plain error, the issue isn't really about whether this is ambiguous or not, because you don't get there, because this is a statutory thing. And I don't think that can be avoided, even under Kaiser. On Kaiser's opinion, page 577 and to 578, it discusses the expertise of the agency, and it references, on that page, Gonzalez v. Oregon, which makes super clear that if the agency is attempting to interpret a statute, that there is no deference to be given to that. And that's what the Gonzalez case also says. So that is clear under Kaiser or under Loper. There's no deference given there once you have an agency or the commission trying to interpret a statute. So I think that the plain error is plain because those are very clear precedents. Neither one of them, though, addresses the sentencing guideline, right? Not this specific, but it's the mode of analysis that's being addressed there. And our case law, though, is pretty clear about what establishes an error as plain, insofar as you're relying on case law. But it doesn't have to go statute by statute or guideline by guideline. It's a mode of analysis. And I think it's very clear that both . . . What's your best authority for that satisfying our plain error standard? It's the series of cases that I . . . You got a citation that says it's the mode of analysis. And it doesn't matter if this is a case about, I don't know, some kind of agricultural regulation, and this is a sentencing guidelines case. The mode of analysis can make it a plain error. Do you have anything like that? I think . . . No, I don't have a specific. I can go back and look. But I will say that it's clear that both Kaiser and Chevron were never statute by statute or guideline by guideline rules. They were rules that were given by . . . They're not plain error cases. I'm talking about how do you satisfy plain error. I understand, but . . . Those are cases that have . . . They're not criminal cases. They're not guideline cases. Dupree was, okay. Dupree was, but you weren't mentioning Dupree. Okay, well, then I'll mention Dupree at this time. But the thing is . . . Dupree is also about the difference between black letter guideline versus commentary. It's not a statute versus guideline issue. I mean, you were saying earlier that this is really about Loeb or Bright because this is the agency interpreting a statute. That's not what Dupree is, though. No, but Dupree shows that the mode of analysis for Kaiser was applicable to the guidelines, and there's no analytical reason why it would be any different for . . . It's like a chain of . . . If you understand this case and this case, and then you apply it to this situation, then I just don't think that satisfies our plain error standard. I will just say that . . . It's been very clear for decades, though, that this is not . . . These mode of analysis were never dependent on a statute by statute or a guideline by guideline, and so it is the mode of analysis, the principle, that's very clear, and that's why I think plain error has been . . . Have any courts around the country, under a Loper, Dupree-type theory, addressed the issue you're raising today? As far as . . . The guidelines use of a 75 to 1 ratio for videos. Yes, but they're unpublished, and they don't address the fact that the guideline itself is a statute. It treats it just like it's a regulation that would have been written by the Sentencing Commission. So I think that that's a really key issue that has to be looked at before you decide what the plain error is about. Okay. Ms. Fotis, I think we understand your case, and we appreciate your argument this morning. Thank you. We'll move to . . .